Opinion by Judge GWIN; Concurrence by Judge GOULD; Concurrence by Judge GWIN; Dissent by Judge D.W. NELSON.
ORDER
The opinion and dissent in the above-captioned matter filed on October 19, 2010, and published at 623 F.3d 1078, is WITHDRAWN. The superseding opinion, dissent, and concurrences shall be filed concurrently with this order.
The parties shall have fourteen (14) days from entry of the superseding opinion to file petitions for rehearing or petitions for rehearing en banc in the above-captioned matter.
IT IS SO ORDERED.
GWIN, District Judge:
OPINION
Plaintiffs Anthony Smith and his wife Theresa Smith appeal the district court’s grant of summary judgment to Defendant Santa Monica Police Sergeant Robert Almada on Smith’s claims for false arrest, malicious prosecution, and suppression of exculpatory evidence and on Theresa Smith’s substantive due process claim for deprivation of familial relations.[1] In support of his action against Almada, Smith claims that Sergeant Almada failed to disclose materially exculpatory evidence in Smith’s criminal arson trial — including a false identification by a key witness that Smith was gloating at the arson scene in the months following the fire. Although Smith’s first trial resulted in a mistrial after the jury was unable to reach a ver *934 diet, he says that access to the exculpatory evidence would have caused the judge not to issue an arrest warrant or would have resulted in an acquittal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm after finding that the arguably non-disclosed evidence would not have resulted in a different outcome.
I
In the early morning hours of February 13, 2003, a fire started inside Simply Sofas, a furniture store owned by Marilyn Nelson. The fire and smoke largely destroyed the store’s inventory, causing more than $2.8 million in damage.
After investigating, fire inspectors determined that an arsonist used three five-gallon water bottles filled with gasoline and stuffed with rolled-up periodicals, newspapers, and other gasoline-soaked mail as “firebombs” to start the fire. Under the melted remains of one bottle, the investigators also found an irregularly shaped piece of asphalt that matched a hole in the alley across the street from the furniture store. The investigators concluded that the arsonist broke the store window, likely with the asphalt, and placed the gasoline-filled bottles on a table just inside the window. They believed the arsonist then ignited the fires.
The gasoline-soaked papers that the investigators found inside the melted bottles included numerous pieces of mail addressed to Appellant Smith’s residence over a five-year period, including: a July 1997 U.S. News magazine addressed to Anthony Smith, a December 1999 U.S. News magazine addressed to Anthony Smith, a January 2000 Motorcycle Rider magazine addressed to Anthony Smith, a 2002 tenant notice issued by Smith’s apartment complex, a 2002 express mail envelope signed for by Anthony Smith, a Fall/Winter 2002 JCPenney catalog addressed to “Aundrea Smith,” a University of Alabama envelope addressed to Anthony Smith, a March of Dimes envelope addressed to Anthony Smith, a handwritten greeting card addressed to “the beloved Smith family,” a Rochester Clothing catalog addressed to Theresa Smith, a Los Angeles Music Center mailer addressed to Anthony Smith, and a Mark Taper Forum mailer addressed to Anthony Smith. The bottle did not include mail from any other individuals. The investigators also found the burnt business card of a Beverly Hills woman who worked for Smith.
Soon after the fire was under control, Defendant Santa Monica Police Sergeant Robert Almada took over the investigation. Almada had investigated four previous fires set in dumpsters behind 2408 Lincoln Boulevard in October and November 2002. Simply Sofas stood at 2314 Lincoln Avenue. With regards to one of the dumpster fires, Almada reported that the “fire source” might be a “possible chemical based incendiary device in a plastic container.” Witnesses to those earlier fires (including store owner Nelson) described different suspects, none resembling Smith.
In his investigation of the February 2003 fire, Sergeant Almada interviewed Nelson, who said that she, her daughter and son-in-law (both business partners in the store with Nelson), and a clerk had keys to the store. Nelson told Sergeant Almada that she and her son-in-law closed the store early the evening of the fire and that her son-in-law locked all of the doors.
According to Nelson, her business was in healthy financial condition: Annual sales were approximately $3 million, with profits around $400,000. The store had almost no debt. Nelson had never made a business- or fire-related insurance claim. Nelson did, however, receive insurance proceeds for the February 2003 fire.
*935 At the time of the initial interview, Sergeant Almada asked Nelson if she could think of anyone with a motive for the arson. Nelson mentioned a former employee whom she had recently fired and a few other names, but not Smith.
Nevertheless, Sergeant Almada began to focus his investigation on Smith because Smith’s mail- — -pieces received over a long period of time and from a variety of sources — had been used as a wick to start the fire at Simply Sofas. Almada questioned Smith, who described selling items on consignment through Nelson’s store and stated that he and Nelson had a “minor issue” in January 2003 arising out of a broken item and a stop-payment order that Nelson had placed on a check paid to Smith.
Sergeant Almada then circled back to speak with Nelson. After Almada told Nelson that Smith was a suspect, Nelson described an “uncomfortable and tense” January 2003 dispute with Smith. The dispute centered over whether a consigned item was damaged before or after being sold to Nelson. Nelson said that when Smith dropped by her store to pick up payment for his consignment items, she told Smith that one of his consignment items had been broken before Smith delivered it to Nelson’s store, and that she would not pay him the full amount for the item. But Smith claimed that one of Nelson’s employees broke the item and demanded that Nelson pay for it. Nelson said that Smith’s demeanor during their argument was threatening and frightening and that he stuck his finger in her face. To end the dispute, Nelson promised to give Smith an additional check for the broken item. Smith’s assistant later called Nelson and said that Smith had lost the first check, so Nelson wrote Smith a second check for the value of the original consignment check plus the value of the broken item. After learning that Smith had not lost the first check, but instead had cashed it, Nelson stopped payment on the second check. Nelson said she felt that Smith was trying to intimidate her into paying more than she owed him.
In addition — and central to Smith’s claims against Sergeant Almada — Nelson claimed to have seen Smith in front of her boarded-up store on the afternoon of June 28, 2003, “laughing and smiling” as he pointed to the area of the fire’s origin. However, Sergeant Almada’s investigation ultimately showed that Nelson’s statement was false: Sergeant Almada viewed a security tape from Smith’s apartment building showing that Smith was at home on June 28, 2003, the day Nelson claimed to have seen him.
Sergeant Almada confronted Smith with the evidence against him, especially the evidence that letters and mailings to Smith had been used as a wick for the firebombs. According to Sergeant Almada, upon learning , of the scale of the fire and the evidence against him, Smith slumped over, began to cry, and apologized repeatedly. Smith recalls the conversation differently, claiming that Sergeant Almada told him that firefighters were fatally injured in the fire and that he cried and said he was sorry for their death but never said that he was involved. Smith gave no explanation for how his mail from over a five-year period ended up in the firebombs, but continued to deny involvement in the fire. Sergeant Almada did not arrest Smith at that time.
Instead, Sergeant Almada met with deputy district attorney Jean Daly to discuss the case against Smith. Daly does not recall discussing the prior dumpster fires behind Nelson’s store, Sergeant Almada claims that he mentioned the previous fires to prosecutor Daly but and-said he doubted that they were related to the February *936 2003 fire. Sergeant Almada did not tell Daly about Nelson’s false report of Smith’s gloating. After hearing Sergeant Almada’s account of the evidence against Smith, prosecutor Daly recommended that Sergeant Almada obtain a warrant for Smith’s arrest.
Consequently, Sergeant Almada sought an arrest warrant from Los Angeles Superior Court Judge Richard Neidorf, who authorized the warrant. Sergeant Almada then arrested Smith, and prosecutor Daly filed a criminal complaint charging Smith with arson. Smith did not make bail after his arrest and remained in jail through his first trial in June 2004.
At Smith’s first trial, Nelson testified that her January 2003 dispute with Smith “shocked” and “intimidated” her. She said that Smith looked at her in a “very threatening” manner and “pushed his finger and almost to my face,” and that as a result she was “frightened” and “very intimidated.” Smith’s defense attorney knew about and attempted to introduce evidence of the October 2002 dumpster fire — which predated Smith’s altercation with Nelson — but the trial court granted the prosecution’s motion in limine to exclude the evidence.
At the conclusion of the first trial, the jury could not reach a verdict, with five jurors voting “guilty” and seven jurors voting “not guilty.”
After the court declared a mistrial, prosecutor Daly reviewed the case with the head deputy district attorney, who approved Daly’s recommendation to retry the case. Smith remained in custody.
At Smith’s second trial in December 2004 — on substantially the same evidence — the jury again could not reach a verdict, this time with one juror voting to convict and eleven jurors voting to acquit. The trial court then dismissed the case against Smith under California Penal Code § 1385, finding that although “there are certainly strong inferences to suggest that Mr. Smith did this,” the prosecution would never be able to obtain a unanimous verdict. Only after this dismissal was Smith released from custody.
Thereafter, the Smiths sued Sergeant Almada under 42 U.S.C. § 1983 in state court for false arrest and malicious prosecution. The case was then removed to federal district court. Although the Smiths did not make any distinct Brady claim in their complaint, the district court overruled Defendant Almada’s objection that the Brady claim was made only after discovery had been completed and should therefore not be considered.
After discovery, the district court granted Sergeant Almada’s summary judgment motion. On the false arrest claim, the district court held that Sergeant Almada was entitled to qualified immunity because a competent officer could reasonably have determined that probable cause existed to arrest Smith for arson. On the malicious prosecution claim, the district court concluded that Sergeant Almada did not knowingly submit material false information to the prosecution. Finally, on the failure to disclose exculpatory evidence claim, the district court held that the allegedly withheld evidence — the fact that Nelson’s testimony about Smith’s gloating at the crime scene was false — would not have materially affected Smith’s trial.
This appeal followed.
II
We review de novo a district court’s grant of summary judgment. See, e.g., Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir.2004). Accordingly, we must determine, viewing the evidence in the light most favorable to Smith, whether any genuine issues of material fact exist *937 and whether the district court correctly applied the substantive law. Id. at 922.
A
With his amended complaint, Smith made claims of false arrest and malicious prosecution. Smith’s first claim — which the district court dismissed on qualified immunity grounds — is that Sergeant Almada violated his Fourth Amendment rights by arresting him without probable cause.
Although a private party may bring a § 1983 claim for an arrest pursuant to an improperly issued arrest warrant, see Malley v. Briggs, 475 U.S. 335, 342, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), qualified immunity shields the arresting officer from suit when he or she “makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances.” Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). The doctrine immunizes reasonable mistakes, thus freeing officers to “make difficult decisions in challenging situations” without allowing fear of liability to “disrupt[] the effective performance of them public duties.” Mueller v. Auker, 576 F.3d 979, 993 (9th Cir.2009).
In a garden-variety false arrest claim challenging the probable cause for an arrest, if the arrest warrant is facially valid, the arresting officer enjoys qualified immunity unless “the warrant application is so lacking in indicia of probable cause as to render official belief in its existing unreasonable .... ” Malley, 475 U.S. at 344-45, 106 S.Ct. 1092; see also KRL v. Estate of Moore, 512 F.3d 1184, 1190 (9th Cir.2008) (“[A]n officer who prepares or executes a warrant lacking probable cause is entitled to qualified immunity unless no officer of reasonable competence would have requested the warrant.”). Here, however, Smith does not contend that Sergeant Almada’s warrant application lacked probable cause on its face. Instead, Smith argues that Sergeant Almada misled the magistrate judge when applying for the warrant, and had the magistrate considered all of the facts that the magistrate would not have found probable cause.
To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant “deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.” KRL v. Moore, 384 F.3d 1105, 1117 (9th Cir.2004). The materiality element — a question for the court, see id. — requires the plaintiff to demonstrate that “the magistrate would not have issued the warrant with false information redacted, or omitted information restored.” Lombardi v. City of El Cajon, 117 F.3d 1117, 1126 (9th Cir.1997). For example, in Ewing v. City of Stockton, 588 F.3d 1218 (9th Cir.2009), we concluded that a warrant application’s two false statements about the plaintiff were not material because an independent, reliable source’s detailed description of the incident and identification of the plaintiff at the scene were sufficient to establish probable cause. Id. at 1224-25. And in Lombardi, although a drug search warrant application failed to mention that the two confidential informants — whose statements were the only evidence that the plaintiff had drugs in his home- — -had axes to grind with the plaintiff, we nevertheless held that the omitted information was immaterial because the informants’ statements were given independently, were detailed, were based on personal observation, were corroborated by one another, and were against one informant’s penal interests. 117 F.3d at 1126-27.
Here, Smith contends that the magistrate would not have issued the ar *938 rest warrant if Sergeant Almada’s warrant application had not included false representations — that Nelson had independently recalled her dispute with Smith and that Smith’s tearful apologies were a tacit admission to the crime — but instead had included (1) the details of the four dumpster fires predating Smith’s altercation with Nelson, (2) the other suspects in the February 2003 fire, and (3) the fact that Nelson falsely claimed to have seen Smith gloating at the crime scene several months after the fire.
Yet even if Sergeant Almada falsified and omitted this information (as Smith contends), the corrected report and warrant application would still have contained facts sufficient to establish probable cause to arrest Smith for arson. First, even without Nelson’s testimony about the payment dispute with Smith over his consigned items that occurred less than one month before the fire — which would have been less credible in light of Nelson’s false report about Smith’s gloating — Sergeant Almada’s corrected report still would have contained Smith’s own admission of the dispute. And, more importantly, Sergeant Almada’s corrected report would still have recounted that the firebombs contained numerous pieces of mail from over a five-year period addressed over a five-year period to Smith and his wife at their residence — a fact that Smith could not explain to Almada or at trial. This evidence linking Smith to the fire was sufficient to overcome any negative inferences the magistrate might have drawn from the earlier dumpster fires.
These facts, together with the evidence of a motive, gave probable cause to believe that Smith was guilty of arson. Thus, because the changes suggested by Smith to Sergeant Almada’s warrant application do not compel the conclusion that “a neutral magistrate would not have issued the warrant,” Lombardi, 117 F.3d at 1126, we conclude that the district court properly granted summary judgment against Smith on his false arrest claim.
B
Smith’s second claim is that Sergeant Almada’s false statements and failure to disclose material information to the prosecutor caused Smith’s malicious prosecution.
 A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others — including police officers and investigators — who wrongfully caused his prosecution. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir.2002). To maintain a § 1983 action for malicious prosecution, a plaintiff must show that “the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her [a] specific constitutional right.” Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir.1995); see also Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55 (9th Cir.2009) (“[Pjrobable cause is an absolute defense to malicious prosecution.”).
As explained above, even after correcting for the allegedly false and omitted information in Sergeant Almada’s warrant application, probable cause supported Smith’s arrest for arson. For the same reason, probable cause supported Smith’s prosecution. Thus, the district court correctly granted summary judgment for Sergeant Almada on Smith’s malicious prosecution claim.
C
Smith’s final claim is that Sergeant Almada violated his due process rights by failing to disclose material exculpatory evidence — in violation of Brady v. Maryland, *939 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Brady requires both prosecutors and police investigators to disclose exculpatory evidence to criminal defendants. See Tennison v. City & County of San Francisco, 570 F.3d 1078, 1087 (9th Cir.2009) (allowing § 1983 claim against police inspector for Brady violation). To state a claim under Brady, the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). As to the prejudice prong, the Supreme Court has stated that “strictly speaking, there is never a real ‘Brady violation’ unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.” Id. at 281, 119 S.Ct. 1936.
Here, Smith contends that Sergeant Almada should have disclosed the four previous dumpster fires that occurred on October 7, 2002, October 15, 2002, November 21, 2002, and November 25, 2002. In investigating these fires, Almada received three suspect descriptions that neither matched each other nor matched Smith. Smith also says that Almada should have disclosed Nelson’s false statement that she saw Smith gloating at the crime scene. Smith argues that had Sergeant Almada disclosed this information, the jury in Smith’s first trial would have acquitted him (or, at the very least, the judge in Smith’s first trial would have dismissed the case immediately after the mistrial), and thus Smith would not have remained in jail for five months until his second trial.
In considering Smith’s Brady claim, District Court Judge Howard Matz found that “Almada is not liable under Brady because the evidence he omitted or misstated would not have materially affected the outcome of the criminal prosecution.” We agree.
Smith’s Brady-based § 1983 claim fails because he has not shown that the withheld evidence was material. First, the evidence of the suspects’ descriptions in the previous dumpster fires is not material because it does nothing to undermine the strong physical evidence — i.e., the numerous pieces of mail — linking Smith to the February 2003 fire. Nor does it call into question evidence suggesting Smith’s motive: Smith himself admitted that he had a dispute with Nelson less than three weeks before the fire.
Second, several differences between the February 2003 fire and the earlier fires undermine the inference that there was one dumpster arsonist or that one of the dumpster arsonists started the February 2003 fire. Although Sergeant Almada reported that one of the dumpster fires may have been started with an incendiary device in a plastic container, the similarities between the fires end there. The dumpster fires occurred in quick succession over a few weeks; the February 2003 fire occurred three months later. The dumpster fires barely damaged the building’s interi- or; the February 2003 fire ravaged Simply Sofas. Witnesses to the dumpster fires described various suspects with very different appearances, suggesting there was no repeat offender who might have later started the February 2003 fire. And Nelson did not identify any of the dumpster fire suspects as having a grudge against her — and thus a motive to target Nelson’s store itself.
More importantly, Smith does not show that any failure to disclose the earlier fires had any effect. Even without a prosecu *940 tion disclosure of the earlier fires, Smith’s attorney otherwise knew about the October 15, 2002 fire and sought to introduce evidence of that fire at trial. In response to Smith’s offer of evidence regarding the October 15 fire, the prosecutor moved the state trial court to exclude evidence of that fire because there was no “direct or circumstantial evidence linking the third person to the actual perpetration of the crime.” See People v. Hall, 41 Cal.3d 826, 226 Cal.Rptr. 112, 718 P.2d 99, 104 (1986). The state trial court agreed and excluded the evidence. Thus, Smith’s attorney knew of at least one earlier fire, and evidence of those earlier fires was likely inadmissible under California evidence law in any case. In sum, we cannot say that had Sergeant Almada disclosed evidence of the earlier dumpster fires, the outcome of Smith’s first trial would have been different.
We are more troubled by Sergeant Almada’s failure to disclose Nelson’s false account of Smith’s gloating at the crime scene. Importantly, Nelson did not testify about the gloating incident at Smith’s first trial. Thus, evidence of her false account could have been used only to impeach Nelson’s character for truthfulness. See Fed.R.Evid. 608(b)(1). But Nelson’s testimony was not crucial at Smith’s trial. Although Nelson’s account of her business dispute with Smith helped establish a motive for Smith to commit the arson, Smith himself admitted the dispute to Sergeant Almada and Almada testified about his interviews with Smith. Moreover, even if the jury discredited all of Nelson’s testimony, it still possessed the important and unexplained evidence linking Smith to the fire: the numerous pieces of mail from over a five-year period addressed to Smith and his wife at their residence.
Even if Sergeant Almada had disclosed Nelson’s false account of Smith’s gloating at the crime scene before Smith’s first trial, we do not find “a reasonable probability of a different result.” Banks v. Dretke, 540 U.S. 668, 699, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). Almada’s failure to disclose the evidence does not sufficiently undermine our confidence in the outcome of Smith’s trial. Strickler v. Greene, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (plaintiff must show “there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense”). Hence, because the evidence that Sergeant Almada failed to disclose was not material, we hold that the district court correctly granted summary judgment for Sergeant Almada on Smith’s Brady claim.
Ill
For the reasons above, we affirm the district court’s grant of summary judgment to Appellee Sergeant Almada.
AFFIRMED.

. The parties agree that Theresa Smith's claim is entirely dependent on the survival of her husband's claims. Because we affirm the dismissal of Smith’s claims, we also affirm the dismissal of his wife’s claims.