Opinion by Judge PAEZ; Dissent by Judge IKUTA.
ORDER
The opinion filed on August 25, 2011 is amended as follows.
Footnote one, appearing on page 16313 of the Slip Opinion, is deleted, and is replaced with the following text.
<<The search warrant authorizing the search of Todd Chism’s home and place of business stated that probable cause existed for violations of Revised Code of Washington §§ 9.68A.050, 9.68A.060, and 9.68A.070. Section 9.68A.050 prohibits “dealing in depictions of a minor engaged in sexually explicit conduct.” Section 9.68A.060 prohibits “sending or bringing into the state depictions of a minor engaged in sexually explicit conduct.” Section 9.68A.070 prohibits “possessing] depictions of a minor engaged in sexually explicit conduct.” The arrest warrant stated that probable cause existed to support the arrest and detention of Todd Chism for violations of Revised Code of Washington §§ 9.68A.060 and 9.68A.070, omitting any reference to § 9.68A.050. The reason for this discrepancy, if any, is unclear. Our analysis of the Chisms’ Fourth Amendment judicial deception claim, however, relates to all three statutes. >>
An amended opinion is filed concurrently with this order.
With this amendment Judges B. Fletcher and Paez vote to DENY the petition for panel rehearing. Judge Ikuta votes to grant the petition for panel rehearing. The petition for panel rehearing is DENIED.
The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35. The petition for rehearing en banc is DENIED.
No further petitions for rehearing or rehearing en banc may be filed in response to the amended opinion.
Plaintiffs-Appellants’ request for attorneys’ fees under 42 U.S.C. § 1988 is DENIED without prejudice to file a separate motion pursuant to Ninth Circuit Rule 39-1.6.
OPINION
PAEZ, Circuit Judge:
This civil rights action under 42 U.S.C. § 1983 arises from an internet child por *383 nography investigation by Washington State Police (WSP) Officers Rachel Gardner and John Sager (“the officers”). As a result of information the officers acquired, Todd Ghism became the focus of their investigation. Gardner prepared an affidavit in support of a search warrant application, which Sager reviewed. On the basis of that affidavit, a magistrate judge issued a broad search warrant to search Todd Chism’s home and business office. Relying on the same information contained in Gardner’s affidavit, Deputy Prosecuting Attorney Christian Peters obtained from the same magistrate judge a warrant to arrest Todd for violating Washington’s child pornography laws.[1] A few days later, several WSP officers executed the search and arrest warrants.[2] A WSP detective eventually conducted forensic examinations of the Chisms’ home computer and computers from the Spokane Fire Department, where Todd Chism worked as a firefighter. The investigation did not reveal any evidence of child pornography, and charges were never filed against Todd Chism.
Several months later, Todd and his wife, Nicole Chism, filed this § 1983 action against the State of Washington, the WSP, Detective Gardner, and Sergeant Sager, alleging — among other things not relevant to this appeal — that the officers violated their Fourth and Fourteenth Amendment rights by securing the search and arrest warrants with an affidavit that deliberately or recklessly contained material omissions and false statements.[3] The Chisms and the officers filed cross motions for summary judgment on the issue of qualified immunity as to the constitutional claim. The district court granted the officers’ motion, concluding that the officers’ conduct did not violate a clearly established constitutional right of which a reasonable officer would have known. The Chisms timely appealed.
We reverse the district court’s judgment and remand this case for trial. Viewing the evidence in the light most favorable to the Chisms, we conclude that the Chisms have made a substantial showing of the officers’ deliberate falsehood or reckless disregard for the truth and have established that, but for the dishonesty, the searches and arrest would not have occurred. We also conclude that the officers are not entitled to qualified immunity because the Chisms’ right to not be searched and arrested as a result of judicial deception was clearly established at the time Gardner prepared and submitted her affidavit.
*384 I. BACKGROUND
On July 3, 2007, Washington’s Missing and Exploited Children Task Force (MECTF) received a tip from the National Center for Missing and Exploited Children (NCMEC). The tip advised MECTF that roughly one week earlier, the web-hosting company Yahoo! had archived images of child pornography that were contained on the website http://foelonipivincmezixecvom.us/ (the “foel website”). The tip listed Yahoo! user account qek9pj8z9 ec@yahoo.com (the “first user account”) as the “suspect.” The tip stated that Internet Protocol (IP) address 68.113.11.49[4] was used to open the first user account on May 11, 2007. The tip did not provide the time or date that the child pornographic images were uploaded to the foel website, nor did it provide the IP address from which the child pornographic images were uploaded. Detective Gardner was assigned to investigate this tip.
On July 17, 2007, MECTF received another tip from NCMEC. Similar to the first tip, the July 17 tip indicated that two weeks earlier, Yahoo! archived images of child pornography that were contained on the website http://qemtudawyommfiseip. com (the “qem website”). The tip listed Yahoo! user account qaagwcyl9ab@yahoo. com (the “second user account”) as the “suspect.” The tip stated that IP address 67.160.71.115 was used to open the second user account on June 19, 2007. The tip did not provide the time or date that the child pornographic images were uploaded, nor did it provide the IP address from which the child pornographic images were uploaded. WSP Detective Vic Mauro was assigned to investigate this tip.
The detectives began their investigations by obtaining warrants to search Yahoo! records associated with the first and second user accounts.[5] In agreement with the first NCMEC tip, the Yahoo! records indicated that the foel website was created on May 11, 2007. The information for the first user account listed the name “Mr. Nicole Chism” with birthday May 20, 1966. The information indicated that “Mr. Nicole Chism” lived in Chile and used zip code “uccl6.” The Yahoo! records also showed that the first user logged in to the account on June 18, 2007 from IP address 69.147.83.181, a different IP address than the one used to create the foel website. The billing information associated with the first user account listed Nicole Chism’s name and contained the Chisms’ correct residential address, phone number, and credit card number, which ended in 6907. Finally, the Yahoo! records showed that two months of “domain service” for the foel website had been paid with the Chisms’ credit card.[6] The Chisms’ credit card statements confirm that they were twice charged a monthly fee for domain service for the foel website.
The information that Yahoo! provided about the second user account was similar in character. In agreement with the second NCMEC tip, the Yahoo! records indicated that the qem website was created on June 19, 2007. The information for the second user account listed the name “Mr. *385 Nicole Chism” with a birthday of March 11, 1977; indicated that “Mr. Nicole Chism” was from Bolivia; and used zip code “nf897.” The Yahoo! records also showed that the second user logged in twice since opening the account. On July 3, 2007, the second user logged in twice: once from IP address 69.147.83.181(the IP address from which the first user logged in on June 18, 2007), and once from a different IP address. Yahoo! did not provide any billing information for the second user account, but the Chisms’ credit card statements showed that Yahoo! charged them one hosting fee for the qem website on June 22, 2007.
Detectives Gardner and Mauro also independently obtained warrants to trace the IP addresses used to create the two user accounts and websites. Detective Gardner learned that the IP address used to open the first user account and to create the foel website was traced to Cheryl Corn of Walla Walla, Washington. The IP address used to open the second user account and to create the qem website was traced to Vitina Pleasant of Federal Way, Washington. It appears that neither Gardner nor Mauro traced IP address 69.147.83.181 — the IP address from which the first user logged in on June 18, 2007 and the second user logged in on July 3, 2007.
A few months later, Mauro’s assignment was transferred to WSP Detective Shelby Wilcox. After reviewing the information from Yahoo!, Gardner and Wilcox noticed that both user accounts used the name “Mr. Nicole Chism” and both websites had at some point been accessed from the IP address 69.147.83.181. Gardner and Wilcox concluded that the tips might be connected, and Gardner took over the investigation of both tips. Gardner decided to investigate the Chism lead, largely because Nicole’s name was common to both tips.
Gardner first determined that the Chisms’ 6907 card was a Bank of America Visa credit card. Gardner contacted Bank of America in September 2007 and learned from a Bank of America employee that the Chisms had reported a lost credit card in 2006. The 6907 card was a replacement for the lost card. The Bank of America employee, however, informed Gardner that no fraudulent activity had been reported on the 6907 card.[7] Gardner eventually obtained credit card statements for the 6907 card and confirmed that the Chisms had paid two charges for the foel website and one charge for the qem website. On the basis of this information, Gardner concluded that there was probable cause to believe that Todd Chism had committed a crime.
In January 2008, Gardner submitted a search warrant application and affidavit to a magistrate judge and obtained a warrant to search the Chisms’ home in Nine Mile Falls, Washington, and Todd Chism’s workplace in Spokane, Washington. Sager reviewed the affidavit and agreed that probable cause existed. On the same day, Deputy Prosecuting Attorney Christian Peters obtained a warrant to arrest Todd for “[sjending, bringing into the state depictions of minor engaged in sexually explicit conduct and [possession of depictions of [mjinor engaged in sexually explicit conduct.” The warrants were executed five days later. WSP officers arrested, detained, and interrogated Todd; *386 they scoured the Chisms’ home; and they seized the Chisms’ computers. No child pornography was found, and criminal charges were never filed against Todd.
The Chisms sued the State of Washington, the WSP, Detective Gardner, and Sergeant Sager under 42 U.S.C. § 1988, alleging violations of their constitutional rights. Both the Chisms and the officers moved for summary judgment on the issue of qualified immunity, and the district court granted the officers’ motion and denied the Chisms’ motion. The district court then declined to exercise supplemental jurisdiction over the Chisms’ state law claims, pursuant to 28 U.S.C. § 1367(c)(3), and dismissed them. The Chisms appeal the district court’s grant of summary judgment.
II. ANALYSIS .
We review de novo a grant of summary judgment on the ground of qualified immunity, and “must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.” Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir.2005) The officers are entitled to qualified immunity unless: (1) the Chisms have “ma[de] out a violation of a constitutional right,” and (2) “the right at issue was ‘clearly established’ at the time of [the officers’] alleged misconduct.” Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)); Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 971 (9th Cir.2010) (en banc). We may consider the two prongs of the qualified immunity analysis in any order. Pearson, 555 U.S. at 236, 129 S.Ct. 808. We begin with the first prong.
A. Constitutional Violation
The Chisms argue that the officers violated their Fourth Amendment rights through judicial deception.[8] For the Chisms’ judicial deception claim to survive summary judgment, the Chisms “must 1) make a substantial showing of [the officers’] deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the [searches and arrest] would not have occurred.” Liston v. Cnty. of Riverside, 120 F.3d 965, 973 (9th Cir.1997) (citing Hervey v. Estes, 65 F.3d 784, 788-89 (9th Cir.1995)) (internal quotation marks omitted).[9]
*387 We first observe that Gardner’s affidavit contained several false statements and omissions. The first false statement contained in Gardner’s affidavit was her assertion that, “[biased on the information received from NCMEC about the images downloaded by Todd M. Chism, it is likely to believe he was using internet service at his residence and/or his business office.” Gardner’s allusion to “images downloaded by Todd M. Chism” is inaccurate. When Gardner drafted the affidavit, she possessed no information that Todd had ever accessed any child pornographic images, let alone the particular images that were uploaded to the qem and foel websites. Nor did Gardner have any evidence that the images were ever downloaded by anyone. As far as Gardner knew, the only evidence linking Todd to the websites was the fact that the credit card he shared with Nicole was used to pay the hosting fees for the sites. Thus, Gardner’s assertion that Todd downloaded images of child pornography was not a truthful representation of the evidence she had gathered.
The second false statement contained in Gardner’s affidavit was her assertion that the Chisms’ credit card was “used to purchase the images of child pornography from the website.” This statement was false because the Chisms’ credit card was not used to buy images of child pornography. Rather, the Chisms’ card was used to pay hosting fees for the sites to which illegal images were uploaded at some unknown time, date, and location. Gardner’s statement that the Chisms’ card purchased child pornographic images was therefore patently false.
Gardner’s affidavit also contained several serious omissions. First, Gardner omitted her discovery that the IP addresses that were used to open the offending Yahoo! user accounts and websites were traced to people other than the Chisms. Second, Gardner omitted the fact that a third IP address — 69.147.83.18—was used to log in to both the first and second user accounts on June 18, 2007, and that this IP address was never traced. Third, Gardner omitted the fact that Nicole shared the 6907 credit card account with Todd, even though Nicole’s name — not Todd’s — was associated with the two user accounts. Fourth, Gardner did not report that the user accounts contained nonsensical identifying information.[10]
Having determined that Gardner’s affidavit contained false statements and omissions, we next consider whether the Chisms have made a substantial showing of the officers’ intentional or reckless disregard for the truth; and, if so, whether their false statements and omissions were material to the probable cause determinations. Liston, 120 F.3d at 973.
1. Intentional or Reckless Deception
As a first element of their judicial deception claim, the Chisms must demonstrate that the officers acted deliberately or with reckless disregard for the truth in preparing the affidavit. Id. at 973. Because the Chisms appeal from a grant of summary judgment, they need only make a “substantial showing” of the officers’ deliberate or reckless false statements and omissions. Id. “Clear proof of deliberation] or reckless[ness] is not required” at the summary judgment stage. United States v. Stanert, *388 762 F.2d 775, 781 (9th Cir.), amended by 769 F.2d 1410 (9th Cir.1985). If the Chisms make such a substantial showing, then “the question of intent or recklessness is a factual determination” that must be made by the trier of fact. Liston, 120 F.3d at 974 (internal quotation marks omitted). Viewing the evidence in the light most favorable to the Chisms, we conclude that the Chisms have made a substantial showing that the officers’ deception was intentional or reckless. The most commonsense evidence that the officers acted with at least a reckless disregard for the truth is that the omissions and false statements contained in the affidavit were all facts that were within Gardner’s personal knowledge. For example, Gardner’s false reference to “images downloaded by Todd Chism” was a statement that Gardner knew to be false when she drafted her affidavit.
The declaration Gardner filed in the district court similarly demonstrates that she knew that the IP addresses used to register the user accounts and websites were traced to other people, and that she knew that the identifying information for the Yahoo! accounts was nonsensical. The fact that the affidavit did not report important factual information that was within the officers’ knowledge at the time Gardner prepared her affidavit would allow a reasonable factfinder to conclude that the officers acted with at least a reckless disregard for the truth. See Butler v. Elle, 281 F.3d 1014, 1025-26 (9th Cir.2002) (per curiam); Stanert, 762 F.2d at 781; see also Liston, 120 F.3d at 975 (“Given the importance of the[omitted information] to the probable cause analysis ... a jury could reasonably conclude that [the affiant’s] failure to mention [that information] in his affidavit amounted to at least reckless disregard for the truth.”).
A reasonable factfinder could also find that the officers acted recklessly or intentionally because the false statements and omissions contained in the affidavit all bolster the case for probable cause, which suggests that the mistakes were not the product of mere negligence. It is conspicuous that, cumulatively, the omissions purged the affidavit of any reference to the possibility that someone other than Todd Chism was responsible for the offending websites. Corn and Pleasant were the people to whom the offending IP addresses were traced, yet this information was omitted from the affidavit. Nicole Chism’s credit card information was used to pay the hosting fees, yet the fact that Nicole was an authorized user of the credit card was omitted from the affidavit. All of the information in each Yahoo! profile was nonsensical, yet this information was omitted from the affidavit. In short, the net effect of Gardner’s omissions was to obscure the prospect that someone other than Todd Chism might have registered the websites and uploaded images of child pornography. We have no difficulty deciding that a reasonable factfinder, viewing the evidence in the light most favorable to the Chisms, could conclude that Gardner’s omissions reflected an affiant “reporting less than the total story ... [to] manipulate the inferences a magistrate will draw.” Stanert, 762 F.2d at 781. Accordingly, we hold that the Chisms made a substantial showing of the officers’ reckless or intentional disregard for the truth.
2. Materiality of the False Statements and Omissions
Our inquiry does not end with the Chisms’ substantial showing that the affidavit contained reckless or deliberate false statements and omissions. To make out their judicial deception claim, the Chisms must also establish that the false statements and omissions were material to the *389 magistrate judge’s probable cause determination. Our inquiry into whether the false statements and omissions were material is a purely legal question, which we analyze de novo. See Butler, 281 F.3d at 1024. The false statements and omissions contained in Gardner’s affidavit were material if “the affidavit, once corrected and supplemented,” would not have provided a magistrate judge with a substantial basis for finding probable cause. Stanert, 762 F.2d at 782. We conclude that a corrected version of Gardner’s affidavit would not have provided the magistrate with a substantial basis for finding probable cause.
i. Materiality as to the Search Warrants
While there is no “numerically precise degree of certainty corresponding to probable cause, ... it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.” Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citing Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)) (internal quotation marks omitted). The Supreme Court has declined to articulate a “neat set of legal rules” for evaluating probable cause, id. at 232, 103 S.Ct. 2317, and instead has instructed magistrate judges to determine probable cause by considering the “totality-of-the-circumstanees,” id. at 230, 103 S.Ct. 2317. In issuing a search warrant, the magistrate judge simply must determine whether there is a “fair probability” that evidence of a crime will be found. Id. at 238, 246, 103 S.Ct. 2317.
Our probable cause analysis is guided by United States v. Gourde, 440 F.3d 1065 (9th Cir.2006) (en banc), a recent case involving the search of a criminal defendant’s computer for images of child pornography. In Gourde, we held that three key pieces of evidence, considered together, were sufficient to establish probable cause to believe Gourde’s computer contained images of child pornography: (1) that the accessed website “was a child pornography site whose primary content was in the form of images”; (2) that as a subscriber to the website, “Gourde had access and wanted access to these illegal images”; and (3) that “[h]aving paid for multi-month access to a child pornography site,” and owing to the “long memory of computers,” Gourde’s computer was likely to contain evidence of a crime. Id. at 1070-71. In other words, we looked for evidence in the affidavit: (1) that a crime was committed; (2) that it was Gourde who committed the crime; and (3) that evidence of the crime would be found in the place to be searched. In light of this “triad of solid facts,” we concluded that “the reasonable inference that Gourde had received or downloaded [child pornographic] images easily meets the ‘fair probability’ test.” Id. at 1071. We use this framework to determine whether Gardner’s affidavit would have supported probable cause if it had presented a truthful description of the evidence she collected during her investigation of Todd Chism.
Like the website at issue in Gourde, the parties do not dispute that the qem and foel websites here contained images of child pornography. Therefore, Gardner’s affidavit meets the first prong of the Gourde inquiry: it presents evidence that a crime was committed. We also assume without deciding that Gardner’s affidavit satisfied the third prong of the Gourde framework by presenting evidence that a computer used to upload child pornographic images would contain evidence of a crime.[11] The remaining prong of the *390 Gourde inquiry requires us to consider whether a truthful version of Gardner’s affidavit would have provided a “fair probability” that Todd Chism committed a crime.
A truthful version of Gardner’s affidavit would have indicated that the sole evidence connecting Todd Chism to the child pornographic images was the fact that the credit card he shared with Nicole was charged three times for hosting the websites that contained child pornographic images. This connection is a far cry from the facts presented in the affidavit, which stated that Todd “downloaded” and “purchase[d]” child pornography.[12] A supplemented version of Gardner’s affidavit also would have informed the magistrate judge that the IP addresses used to register the websites were traced to people other than the Chisms, and that the Yahoo! user accounts associated with the websites contained nonsensical identifying information. In considering all of the information available to the officers, we do not think it sufficient to establish a fair probability that evidence of a crime would be found at the Chisms’ home or Todd Chism’s office.
We find it particularly significant that the IP addresses from which the qem and foel websites were created were traced to internet subscribers hundreds of miles away from the Chisms’ home in Nine Mile Falls, Washington. We have explained that a computer that is connected to the internet can be uniquely identified by its IP number, much like a land-line phone can be uniquely identified by its phone number. See Forrester, 512 F.3d at 510 n. 5. Moreover, we have repeatedly recognized the utility of using IP address information to investigate child pornography offenders. See United States v. Craighead, 539 F.3d 1073, 1080-81 (9th Cir.2008) (holding that probable cause existed where the IP address from which child pornographic images were shared was traced to the defendant); United States v. Hay, 231 F.3d 630, 634-35 (9th Cir.2000) (holding that an affidavit demonstrated probable cause where the agent carefully detailed how the IP address associated with the child pornographic images was connected to the defendant). Our sister circuits take the same approach. See, e.g., United States v. Vosburgh, 602 F.3d 512, 526-27(3d Cir.2010) (“[Several Courts of Appeals have held that evidence that the user of a computer employing a particular IP address possessed or transmitted child pornography can support a search warrant for the physical premises linked to that IP address.”) (footnote omitted); United States v. Stults, 575 F.3d 834, 843-44 (8th Cir.2009); United States v. Perrine, 518 F.3d 1196, 1205-06 (10th Cir.2008); United States v. Perez, 484 F.3d 735, 738-40 (5th *391 Cir.2007); United States v. Wagers, 452 F.3d 534, 539 (6th Cir.2006); Hay, 231 F.3d at 635-36; see also United States v. Bynum, 604 F.3d 161, 165 (4th Cir.2010).
Here, the IP address associated with child pornographic images led to locations different from the locations to be searched, and the affidavit did not establish a physical link between the illegal images and the locations to be searched.[13] Several inferences would have to be drawn in order to conclude that Todd violated Washington’s laws against child pornography. First, one would have to infer that Todd had used his wife’s name rather than his own to pay the hosting fees for the sites. One would also have to infer that Todd devised a way to access the foel and qem websites with a forged IP address. Finally, one would have to infer from the previous two inferences that Todd was the person who uploaded the child pornographic images from his computer to the websites at an unknown time, date, and location. This convoluted string of inferences reduces the possibility that child pornography would be found at Todd Chism’s home and office to far below a “fair probability.” See United States v. Weber, 923 F.2d 1338, 1345 (9th Cir.1990) (explaining that “with each succeeding inference, the last reached is less and less likely to be true.”).[14]
Our conclusion also finds support in the WSP’s training materials, which explain:
Much, if not all, of the cyber-evidence (the E-mail addresses and IP addresses used) will lead you to an innocent person. That’s why simply identifying which account was used to commit a crime does not provide you with probable cause to get a search or arrest warrant for the name and address on that account. You’ll need to do more investigating to determine if there is a link between the account holder (or other members of the household) with the criminal activity that was committed with that account.
The affidavit submitted by Marcus Lawson, the president of a computer forensic company that examined Todd Chism’s computers similarly admonishes:
[T]o have any success as an Internet criminal, regardless of whether one was a thief, a hacker or a child pornography collector, it would be incumbent to use other people’s identities to do so.... It is primarily for this reason that relying only on information provided by the user of a credit card that is associated with criminal activity is inherently unreliable.
(emphasis added).
We are mindful that “[a] letter-perfect affidavit is not essential.” United States v. *392 Esparza, 546 F.2d 841, 844 (9th Cir.1976). In this case, however, we do not believe that a reasonable magistrate judge would have issued the search warrant if she had been apprised of an accurate version of the evidence. We therefore hold that the affidavit’s false statements and omissions were material to the probable cause determination for the search warrants.
ii. Materiality as to Todd Chism’s Arrest
Unlike the search warrants — which were supported by Gardner’s affidavit — the warrant for Todd’s arrest was supported by a Certification of Probable Cause (CPC) from Peters, a state prosecutor. In the CPC, Peters cited Gardner’s investigation as the source of his information.
Like Gardner’s affidavit, Peters’ CPC contained material false statements and omissions. For example, like Gardner’s affidavit, Peters’ CPC stated that the Chisms’ card was used to “purchase the images of child pornography,” which is a false statement. Also like Gardner’s affidavit, Peters’ CPC omitted critical information, including the fact that the IP addresses used to create the Yahoo! user accounts and websites were traced to Corn and Pleasant. Peters similarly withheld the fact that the two Yahoo! user accounts contained nonsensical identifying information for the Chisms, and that Nicole shared the 6907 credit card with Todd. These false statements and omissions were material as to Todd Chism’s arrest for the reasons discussed above.
That the CPC supporting probable cause was submitted by Peters — not Gardner — is inconsequential. In fact, the officers do not dispute that they might be held responsible for damages stemming from Todd’s arrest even though the warrant for this arrest was supported by Peters’ CPC rather than Gardner’s affidavit. Moreover, we have held that a “deliberate or reckless omission by a government official who is not the affiant can be the basis for a [suppression claim under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ].” United States v. DeLeon, 979 F.2d 761, 764 (9th Cir.1992). Because Franks suppression claims and judicial deception claims under § 1983 involve the same constitutional right, we do not see any reason to distinguish DeLeon from this case. Hervey, 65 F.3d at 789 (“The showing necessary to get to a jury in a section 1983 action is the same as the showing necessary to get an evidentiary hearing under Franks.”). Therefore, we hold that the Chisms have made out a judicial deception claim for Todd’s arrest.
B. Qualified Immunity
Qualified immunity shields the officers from liability “insofar as their conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Although there are genuine triable issues of fact as to the merits of the Chisms’ judicial deception claim, our discussion in the previous section demonstrates that the Chisms have made an adequate showing that there was a constitutional violation. Therefore, we must consider whether the Chisms’ constitutional rights were clearly established at the time that Gardner submitted her affidavit.
In determining whether the Chisms’ constitutional rights were clearly established at the time of the officers’ conduct, we ask whether the contours of the Chisms’ rights were so clear that “every ‘reasonable official would have understood that what he is doing violates that right.’ ” Ashcroft v. al-Kidd, — U.S. —, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) *393 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Although “[w]e do not require a case directly on point, [] existing precedent must have placed the statutory or constitutional question beyond debate.” Id.
Our analysis of this prong is brief because we have already held that governmental employees are not entitled to qualified immunity on judicial deception claims. In Branch v. Tunnell, 937 F.2d 1382 (9th Cir.1991) (overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir.2002)), we explained that
if an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, ... he cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost.
Id. at 1387(quoting Olson v. Tyler, 771 F.2d 277, 281(7th Cir.1985)) (internal quotation marks omitted). We have consistently applied the rule that summary judgment on the ground of qualified immunity is not appropriate once a plaintiff has made out a judicial deception claim.[15] See, e.g., Liston, 120 F.3d at 972; Hervey, 65 F.3d at 788. In light of Branch, Liston, and Hervey, we conclude that “every ‘reasonable official would have understood’” that the Chisms had a constitutional right to not be searched and arrested as a result of judicial deception. al-Kidd, 131 S.Ct. at 2083. We therefore hold that the officers are not entitled to qualified immunity.
III. CONCLUSION
For the foregoing reasons, we reverse the district court’s grant of summary judgment to the officers.
REVERSED AND REMANDED.

.The search warrant authorizing the search of Todd Chism's home and place of business stated that probable cause existed for violations of Revised Code of Washington §§ 9.68A.050, 9.68A.060, and 9.68A.070. Section 9.68A.050 prohibits "dealing in depictions of a minor engaged in sexually explicit conduct.” Section 9.68A.060 prohibits "sending or bringing into the state depictions of a minor engaged in sexually explicit conduct.” Section 9.68A.070 prohibits "possessi[ng] depictions of a minor engaged in sexually explicit conduct.” The arrest warrant stated that probable cause existed to support the arrest and detention of Todd Chism for violations of Revised Code of Washington §§ 9.68A.060 and 9.68A.070, omitting any reference to § 9.68A.050. The reason for this discrepancy, if any, is unclear. Our analysis of the Chisms’ Fourth Amendment judicial deception claim, however, relates to all three statutes.

. The police report detailing the investigation seems to indicate that Sager was present for the search. It is unclear from the police report whether Gardner was present.

. In addition to their constitutional claim, the Chisms’ First Amended Complaint alleges nine other causes of action, most of which are tort claims relating to events that occurred after the search and .arrest warrants were executed.

. As we have explained, "[e]very computer or server connected to the Internet has a unique IP address.” United States v. Forrester, 512 F.3d 500, 510 n. 5 (9th Cir.2008).

. The record indicates that Gardner and Mauro independently obtained warrants to search Yahoo! records associated with the NCMEC tips because at that point in the investigation the detectives had no reason to believe the tips were connected.

.The "domain service” fee is a fee that Yahoo! charges to host, or, provide server space and internet connection, for an individual website. We use the terms "domain service fee” and "hosting fee” interchangeably throughout.

. This information was, in fact, false. The Chisms reported fraudulent activity on their 6907 card in August 2007, roughly one month after Gardner received the NCMEC tips and roughly one month before Gardner spoke to Bank of America. Because the officers were not aware of this reported fraud at the time Gardner drafted her affidavit, we place no significance on the omission of this relevant information from the affidavit.

. We disagree with the Dissent’s brief suggestion that the Chisms waived the opportunity to argue that Gardner’s affidavit contained false statements. The Chisms' failure to precisely articulate each false statement and omission to support their judicial deception claim does not undermine our ability to consider all of the false statements and omissions contained in Gardner’s affidavit. The Supreme Court has explained that it is claims— not arguments — that are waived by failure to present an issue to the court below. See Lebron v. Nat’l R.R. Passenger Corp., 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995); accord United States v. Guzman-Padilla, 573 F.3d 865, 877 (9th Cir.2009); United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir.2004).

. A judicial deception claim is different from a garden-variety claim that a warrant lacked probable cause on its face. We have explained that a plaintiff bringing a judicial deception claim "argues that [an officer] misled the magistrate judge when applying for the warrant, and had the magistrate considered all of the facts that the magistrate would not have found probable cause.” Smith v. Almada, 640 F.3d 931, 937 (9th Cir.2011). A judicial deception claim can be contrasted with a garden-variety claim that a warrant lacked probable cause on its face, in which "the arresting officer enjoys qualified immunity unless the warrant application is so lacking in indicia of probable cause as to render official belief in its existing unreasonable.” Id. (quoting Malley v. Briggs, 475 U.S. 335, *387 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)) (internal quotation marks omitted).

. As described above, the first user account was registered with the name "Mr. Nicole Chism,” the country Chile, and the zip code uccló. The second user account was registered with the name "Mr. Nicole Chism,” the country Bolivia, and the zip code nf897.

. Specifically, Gardner's affidavit stated that "in [her] experiences and from [her] conver *390 sations with computer forensic examiners, computer evidence can remain stored on computers for extended periods of time,” and can be recovered from a computer even if it is deleted by the user.” The affidavit also stated that ”[p]ersons involved in sending or receiving child pornography tend to retain it for long periods of time.” The Chisms do not challenge these assertions.

. The Dissent downplays the significance of the affidavit’s misstatements. We agree with the Dissent that the affidavit's use of the word "downloaded” instead of "uploaded” is not material because evidence that Todd Chism had uploaded images of child pornography— if such evidence had existed — would have been just as damaging as evidence that he downloaded child pornography. See Revised Code of Washington 9.68A.050-9.68A.070 (prohibiting possessing, disseminating, and sending child pornography). The problem with the affidavit is not that it uses the word "downloaded” instead of "uploaded,” but rather, that it improperly states that Todd Chism was the perpetrator. As we have explained, this error was significant because there was no evidence that Todd Chism had ever accessed either of the offending websites.

. We disagree with the Dissent that Gourde is factually indistinguishable from this case. In Gourde, we noted that the FBI was able to “link[] the email user — ‘gilbert95@yahoo. com,' a known subscriber to [a child pornographic website] — to Gourde and to his home address in Castle Rock, Washington.” 440 F.3d at 1071. We did not specify in Gourde whether the FBI used IP address information to link the user information to Gourde, nor did any of the evidence in Gourde raise the specter of identity theft. In contrast to Gourde, several pieces of evidence in this case suggested that Todd Chism was not connected to the child pornographic images.

. The Dissent argues that "the lack of a match between the IP addresses used for registration and the Chisms' IP address has no probative value.” Dissent at 19964. We disagree. Where, unlike here, a person's IP address is used to upload or download child pornography, there is a direct link between that person’s physical location and evidence of a crime. When this direct link is absent, at least one, if not several, additional inferences are necessary to conclude that evidence of a crime will be found at the location to be searched.

. In judicial deception cases, our qualified immunity analysis at the summary judgment stage is swallowed by the question of reckless or intentional disregard for the truth. See Butler, 281 F.3d at 1024 (noting that "our cases effectively intertwine the qualified immunity question (1) whether a reasonable officer should have known that he acted in violation of a plaintiff's constitutional rights with (2) the substantive recklessness or dishonesty question”). We have explained that this "merger” is sensible because "no reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in seeking a warrant. Accordingly, should a factfinder find against an official on this state-of-mind question, qualified immunity would not be available as a defense.” Id.